**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHARLES EUGENE CROSS,                    )
                                         )
                   Petitioner,           )
                                         )
                                         )    Civil Action No. 95-614
                                         )
          v.                             )
                                         )
JAMES S. PRICE,                          )
                                         )
                   Respondent.           )
                                         )
AMBROSE , Chief District Judge           )


# OPINION
## and
# ORDER OF COURT

On March 1, 1982, a jury empaneled by the Court of Common Pleas of Beaver County convicted Petitioner, Charles E. Cross, of three- counts of first-degree murder for the brutal killings of Denise Lucic and her two children, Danielle, age seven, and John Jr., age three.  Following a separate penalty hearing, the jury sentenced Cross to death for each conviction of first-degree murder.   The validity of Cross' convictions for those heinous murders is not at issue today.  (See Doc. 60; Doc. 68 at 9 n.1; Doc. 93).   His sentences for death are.   Cross contends that the penalty proceedings against him were infected with federal constitutional error and that he is entitled to a new penalty hearing.

Under Pennsylvania's sentencing scheme, a jury in a capital case that has convicted a defendant of first-degree murder must decide at a separate penalty

1

hearing whether to sentence the defendant to death or to life in prison.  At his penalty hearing, Cross took the stand and told the jury that, if they sentenced him to life imprisonment, he would later be released on parole and "get on with his life." (Trial Tr. at 818).  This was a clear misstatement of Pennsylvania law, which actually provides that Cross would never be eligible for parole if sentenced to life in prison. Cross' trial counsel did not request a curative instruction to inform the jury of the true alternatives they faced in sentencing Cross.  As a result, the jury deliberated its sentence under the incorrect and "highly prejudicial" belief that Cross would one day be back on the streets if they did not sentence him to death.  Carpenter v. Vaughn, 296 F.3d 138, 158 (3d Cir. 2002).   Under these circumstances, I am constrained to hold that counsel's failure to request a curative instruction, and his predicate failure to properly prepare Cross so as to avoid the misstatement of state law, violated Cross' Sixth Amendment right to effective assistance of counsel. Counsel's error permeated the entire sentencing process and undermines confidence in the outcome of the penalty hearing.  Accordingly, I shall vacate Cross' death sentences and direct that the Commonwealth conduct a new penalty hearing.

## I.

This case is before me for the second time.  In 1997, I rejected Cross' claims for federal habeas corpus relief.  (Docs. 68 & 71).  Following an appeal, the United States Court of Appeals for the Third Circuit remanded for further review.  Because of the somewhat complex and protracted nature of these proceedings, a summary

2

of the relevant factual and procedural history of the case is in order.

## A.

At Cross' penalty hearing, the prosecution sought to establish two aggravating circumstances.  First, it sought to establish that Cross had a significant history of felony convictions involving the use or threat of violence to the person, 42 PA.CONS.STAT. § 9711(d)(9).  In support, it presented evidence that in 1974 Cross had been convicted of rape and sodomy in Fairfax County, Virginia, and was sentenced to serve fifteen years in prison for the rape conviction.  (Trial Tr. at 713).  During the presentation of this evidence, the jury also learned that Cross only served approximately five years of that sentence before he received parole and moved to Pennsylvania.  (Id. at 712-13).  Second, the prosecution sought to establish that Cross had been convicted of another offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable, 42 PA.CONS.STAT. § 9711(d)(10).  The prior rape conviction was offered in support of this factor, as were the murder convictions for which Cross was just convicted.[1]

The defense presented evidence in an effort to establish four mitigating circumstances: (1) that Cross had no significant history of prior criminal convictions, id., § 9711(e)(1); (2) that he was under the influence of extreme mental or emotional

---

[1]  The trial court explained to the jury: "[I]n deciding whether or not an aggravating circumstance exists in the case of the homicide of Denise Lucic, you could consider that the Defendant had been convicted by you … of the first degree murders of Danielle and John Lucic, Jr. And the same would be true of the other cases also in deciding whether or not an aggravating circumstance existed in all three of these cases."  (Trial Tr. at 822).

disturbance at the time of the murders, id., § 9711(e)(2); (3) that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, id., § 9711(e)(3); and (4) that there were other mitigating circumstances, id., § 9711(e)(8).  In support of its mitigation case, the defense presented the testimony of Cross (Trial Tr. at 817-18) and the testimony of Dr. Thomas M. Eberle, a clinical and forensic psychologist.  (Id. at 718-75).

After conducting its deliberations, the jury found that the two aggravating circumstances outweighed any mitigating circumstances and sentenced Cross to death on each count of murder.  (Id. at 833).

Cross unsuccessfully challenged his judgment of sentence on direct appeal, Commonwealth v. Cross, 496 A.2d 1144 (Pa. 1985), and in a proceeding conducted under the Pennsylvania Post Conviction Relief Act ("PCRA"), Commonwealth v. Cross, 634 A.2d 173 (Pa. 1994).  On April 20, 1995, he initiated federal habeas corpus proceedings in this Court pursuant to 28 U.S.C. § 2254.[2]  The case was referred to Magistrate Judge Kenneth J. Benson.  On September 12, 1995, Cross filed an Amended Petition for Writ of Habeas Corpus.  (Doc. 37).  Therein, he raised numerous claims and subclaims for relief.

In a claim that will hereinafter be referred to as "Claim 1," Cross contended that his trial attorney provided him with ineffective assistance of counsel contrary

---

[2]  Because Cross filed his petition prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (effective April 24, 1996 and codified in relevant part at 28 U.S.C. § 2241-55), the pre-AEDPA version of the federal habeas corpus statute applies to this case.  See e.g., Carpenter v. Vaughn, 296 F.3d 138, 149 n.12 (3d Cir. 2002).

to the guarantees of the Sixth Amendment by allowing him to misstate to the jury, without subsequent correction, that he would be eligible for parole in twenty years if sentenced to life in prison.  (Doc. 37 ¶ 46k).  This claim was premised upon the following statement Cross made to the jury during the penalty hearing:

> This jury of twelve people ha[s] found me guilty of a crime that I did not commit.  I stand before God Almighty as an innocent man.  While you found[ ] me guilty the guilty parties are still on the street.  Eventually they are going to kill again.  When they kill again possibly a confession could come forth.  If you send me to the electric chair it won't help me any.  *If you send me to a penitentiary for life, at least I could be released and get on with my life.*  I plead with this jury that you come back with a life sentence.  *And it is going to be a long sentence since I have time waiting for me in Virginia of fifteen years.  From my understanding I will spend twenty years before I am eligible for parole here.  That's thirty-five years I will be spending behind bars.*  I have nothing more to say.  Just have mercy on me.

(Trial Tr. at 817-18 (emphasis added)).

Cross' statement regarding his eligibility for parole if given a sentence of life imprisonment was incorrect as a matter of Pennsylvania law.  Cross, 634 A.2d at 178; see also 42 Pa.Cons.Stat. § 9711(a)(1); Pa.Stat. tit. 61, § 331.21(a).  In Pennsylvania, a defendant sentenced to life in prison is not eligible for parole.[3]  Id.

In a claim that will hereinafter be referred to as "Claim 2," Cross contended that his trial counsel provided him with ineffective assistance by failing to adequately investigate and present available evidence of mitigating factors to

---

[3]  A defendant whose life sentence is commuted by the governor to a term of years is eligible for parole.  Such commutations are rare in Pennsylvania.  (See The General Assembly's Joint State Government's Report of the Advisory Committee on Geriatric and Seriously Ill Inmates at 4 (June 2005)).

support the defense's case that Cross should be sentenced to life in prison.  (Doc. 37 ¶ 46a-e; see also id. at ¶¶ 6-13).  To support Claim 2, Cross relied upon testimony presented during the state PCRA hearing and statements given by his family members and mental-health experts.

Approximately one month after he filed his Amended Petition, Cross filed with this Court the Affidavit of Melvin P. Melnick, M.D.  (Doc. 44).  Dr. Melnick is the psychiatrist who testified on behalf of the Commonwealth during the penalty phase of Cross' trial.  (Id. ¶ 2).[4]  Cross used Dr. Melnick's affidavit to supplement the evidentiary support for Claim 2,[5] but he acknowledged that he had never presented Dr. Melnick's affidavit to the state courts.  (Doc. 60 at 46).  In order to exhaust claims premised upon Dr. Melnick's affidavit, Cross filed a second PCRA petition with the Court of Common Pleas of Beaver County in January 1997.  (Doc. 105, Ex. 1).  On March 6, 1997, the PCRA court denied the petition.  (Id., Exs. 7, 13, & 14).  Cross appealed to Supreme Court of Pennsylvania.  (Id., Exs. 8-12, 19-20).

In the meantime, on March 27, 1997, Magistrate Judge Benson issued his

---

[4]  In his affidavit, Dr. Melnick stated that if he had been provided with the family history and other available mitigating evidence that Cross faulted his trial counsel for not gathering, he could not have testified for the Commonwealth during the sentencing hearing "that Mr. Cross was free of psychopathology."  (Doc. 44 ¶ 7).  He also stated: "[I] would have concluded that Mr. Cross is a disturbed man who had been the object of mistreatment that had adversely influenced his capacity to modulate (i) his own aggressive impulses and (ii) his ability to relate compassionately with the objects of anger.  Furthermore, I would have concluded that the structure of Mr. Cross' personality was impaired to such an extent that his ability to think rationally when confronted with intense emotions was diminished."  (Id. ¶ 8).

[5]  In addition to supplementing his claim of ineffective assistance of counsel, Cross also raised additional claims supported by Dr. Melnick's affidavit.  He claimed that because Dr. Melnick's affidavit established that his (Dr. Melnick's) penalty-hearing testimony was materially inaccurate, the death sentences violated his fundamental right to due process under the Fourteenth Amendment and his Eighth Amendment right to reliable capital sentencing proceeding.  (Doc. 60 at 37-45).

Report and Recommendation ("R&R") to this Court. (Doc. 68). He recommended that all of Cross' claims be denied. On May 13, 1997, after *de novo* review of the pleadings and documents in the case, together with the R&R and Cross' objections thereto (Doc. 70), Magistrate Judge Benson's R&R was adopted as the Opinion of this Court. (Doc. 71).

All of Cross' Sixth Amendment ineffective assistance of counsel claims were reviewed within the framework set forth in Strickland v. Washington, 466 U.S. 668 (1984). Pursuant to Strickland, to prevail on an ineffective assistance of counsel claim the petitioner must first show that his counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688-90. This requires a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. Second, the petitioner must show that his counsel's deficient performance prejudiced the defense. To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also id. 692-97.

With respect to Claim 1, I determined that Cross had satisfied the first prong of Strickland. I concluded his trial counsel's failure to properly prepare Cross and his subsequent failure to correct Cross' misstatement of law amounted to objectively unreasonable representation. (Doc. 68 at 29-36). I held that counsel's inaction was "clearly erroneous" and that "there is no reasonable strategy presented

in this case for not attempting to correct the misstatement." (Id. at 32-35).

I further determined, however, that Cross was not entitled to habeas relief on Claim 1 because he had not demonstrated that counsel's error prejudiced him. Central to my analysis was the United States Supreme Court's decision in Simmons v. South Carolina, 512 U.S. 154 (1994). In Simmons, the defendant was convicted of first-degree murder in South Carolina state court and the jury had to deliberate whether to sentence him to death or life in prison. 512 U.S. at 157-58. Under South Carolina law, he was ineligible for parole if sentenced to life. Id. Nonetheless, at the penalty hearing the prosecutor explicitly argued that the jury should impose a death sentence because the defendant would be a future danger to society if sentenced to life. Id. at 157. The Supreme Court held that under these circumstances, the Due Process Clause of the Fourteenth Amendment required that the trial judge instruct the jury that the defendant, if not sentenced to death, would receive a sentence of life imprisonment without the possibility of parole.[6] Id. at 156-78.

After determining that Simmons applied retroactively to this case,[7] I decided that because the prosecution did not argue Cross' future dangerousness, this case

_____

[6] The plurality opinion held that "where the defendant's future dangerousness *is at issue*, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." Simmons, 512 U.S. at 156 (emphasis added). The Court of Appeals has noted that "Justice O'Connor's controlling concurrence may be read as adopting a narrower holding, namely, that the dispositive question is not whether a defendant's future dangerous[ness] is 'at issue' but whether '*the prosecution argues* that the defendant will pose a threat to society in the future.'" Bronshtein v. Horn, 404 F.3d 700, 716 (3d Cir. 2005 (quoting Simmons, 512 U.S. at 177 (O'Connor, J., concurring in the judgment)).

[7] The Supreme Court subsequently held that Simmons does not apply retroactively to cases such as this, in which direct review of the petitioner's conviction ended prior to the issuance of the Simmons decision. O'Dell v. Netherland, 521 U.S. 151 (1997).

was distinguishable from, and less compelling than, <u>Simmons</u>.   Although I acknowledged that I was genuinely uneasy about the impact counsel's error may have had on the jury's deliberation, I ultimately determined that defense counsel's failure to correct the misstatement of state law did not entitled Cross to habeas corpus relief on Claim 1.  (Doc. 68 at 29-37).

I also determined that Cross was not entitled to habeas relief on Claim 2.  I noted that I considered Dr. Melnick's affidavit in reviewing this claim, and still determined that habeas corpus relief was not warranted.[8]  (<u>Id.</u> at 12; <u>see</u> <u>also</u> <u>id.</u> at 28 n.9).

## B.

On June 12, 1997, Cross appealed this Court's decision to the Court of Appeals. (Doc. 72).  At the same time, he was pursing an appeal to the Supreme Court of Pennsylvania challenging the Common Pleas Court's decision to deny him relief on his second PCRA petition.  (Docs. 105 & 106).  In September 1997, he filed a motion with the Court of Appeals requesting that the proceedings before it be held in abeyance pending the exhaustion of his Dr. Melnick claims in the state court appeal. (Doc. 107, Ex. G).  The Court of Appeals granted Cross' motion and stayed the proceedings before it.  (<u>Id.</u>, Ex. N).

---

[8]  Consideration of the affidavit was proper because the Common Pleas Court had denied Cross' second PCRA petition and it thus appeared that Cross had no remedy available in the state court and therefore the exhaustion requirement was excused.  (Doc. 68 at 12).  I also noted that I did not consider claims premised upon Dr. Melnick's affidavit to be separate claims that needed to be exhausted in state court.  (<u>Id.</u> at 12 n.2).  Rather, I viewed Dr. Melnick's affidavit as additional evidentiary support for Claim 2.  Although he noted that federal courts should generally not consider evidence that has not been presented to the state courts, I considered Dr. Melnick's affidavit because I found that his affidavit was "probative of nothing, and does not change the analysis of the ineffective assistance claim."  (<u>Id.</u>)

In January 1998, Cross supplemented his appeal in the Pennsylvania Supreme Court to include an additional claim.  (Doc. 106, Ex. 27).  He contended that the jury instructions and verdict sheets during the penalty phase violated the Eighth Amendment by informing the jury erroneously that they had to unanimously agree on the existence of any mitigating circumstance before they could use that circumstance in the life-or-death weighing process with the aggravating circumstance.  He asserted that under the rule set forth in Mills v. Maryland, 486 U.S. 371 (1988), the jury should have been informed that each member could decide for himself or herself which mitigating circumstances existed and that he or she could use that circumstance in deciding with the rest of the jury what sentence to impose. Cross further contended that a recent decision issued by the Court of Appeals, Frey v. Fulcomer, 132 F.3d 916 (3d Cir. 1997), compelled relief in his case.[9]  (Doc. 106, Ex. 27).

On February 25, 1999, the Pennsylvania Supreme Court issued its decision denying Cross relief on his second PCRA petition.  Commonwealth v. Cross, 726 A.2d 333 (Pa. 1999).  It held that claims premised upon Dr. Melnick's affidavit were untimely under the  PCRA's statute of limitations.  Cross, 726 A.2d at 606-11.  It also denied the Mills claim on the merits.  It noted that "[a]lthough the charge given in this case is indistinguishable from the charge in Frey," it disagreed with the Court of Appeal's holding in Frey that the charge "creates an ambiguity as to whether the

_____

[9]  In Frey, the Court of Appeals determined that the jury instructions and verdict slip used in that case (and which were similar to those used in Cross' case) violated the holding in Mills.

jury was required to find both aggravating circumstances and mitigating circumstances unanimously."  Id. at 612.  It further held, *inter alia*, that the rule announced in Mills was a "new rule" under the retroactivity analysis set forth in Teague v. Lane, 489 U.S. 288 (1989),[10] and therefore could not be applied retroactively to Cross' case because that decision was issued after direct review of Cross' judgment of sentence concluded.  Id. at 613 n.4.

After the Pennsylvania Supreme Court issued its decision, Cross filed a motion with the Court of Appeals requesting that this case be remanded to the district court "to conduct such proceedings as are deemed appropriate by that court and to consider and review its opinion and order in light of the two newly exhausted claims resolved by the courts of the Commonwealth of Pennsylvania." (Doc. 107, Ex. O).  The Court of Appeals granted Cross' Motion, and on August 2, 2001, this case was remanded.[11]  (Doc. 80).

## II.

Presently, Cross requests that the Court consider three issues.  First, he asks

---

[10]  In Teague, the Supreme Court held that "unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."  489 U.S. at 310.

[11]  Following the remand, we stayed these proceedings pending a decision by the United States Supreme Court on Banks v. Horn, 316 F.3d 228 (3d Cir. 2003).  In Banks, the Court of Appeals considered the retroactive application of Mills.  The court held that the rule announced in Mills was not a "new rule" under Teague's retroactivity analysis, and thus it applied to federal habeas petitioners, like Cross, whose judgment of sentence became final prior to the issuance of the Mills decision.

On June 24, 2004, the Supreme Court issued its decision reversing the Court of Appeals.  Beard v. Banks, 524 U.S. 406, 124 S.Ct. 2504 (2004).  It held that Mills announced a new rule of constitutional law under Teague, and that it did not apply retroactively to petitioners like Cross.  Banks, 524 U.S. at __ , 124 S.Ct. at 2508-16.  Following the issuance of that decision, we lifted the stay and issued a briefing schedule.  (Doc. 91).

me to reconsider my dismissal of Claim 1 in light of intervening Court of Appeals' authority, Carpenter v. Vaughn, 296 F.3d 138 (3d Cir. 2002).  In Carpenter, the Court of Appeals determined that the petitioner had received ineffective assistance of counsel when his trial attorney failed to correct a misstatement of law that may have misled a capital jury that he could be paroled if sentenced to life in prison. Second, he asks me to reconsider the dismissal of Claim 2.  Included within this claim is his contention that his trial counsel should have gathered and developed social and family history information and provided that to Dr. Melnick prior to the penalty hearing.[12]   Third, he raises an Eighth Amendment claim, arguing that the jury instruction and verdict slip employed at sentencing violated the rule announced in Mills.[13]  He also claims that that same jury instruction and verdict sheet violated his Fourteenth Amendment due process rights.

Because I conclude that a writ of habeas corpus is to be  issued with respect to Claim 1,[14]  I decline Cross' request to reconsider Claim 2 or decide the merits of his

---

[12]   Cross also contends that the cumulative prejudice he incurred as a result of the deficient performance that he raises in Claim 1 and Claim 2 warrants habeas relief on his sentence of death.

[13]   Cross acknowledges that the Supreme Court's decision in Beard v. Banks makes clear that Mills announced a new rule and that therefore Teague's non-retroactivity defense would preclude relief on this claim.  (Doc. 93 at 70).  He argues, however, that the Teague defense is an affirmative defense that was waived by the Commonwealth.  (Id. at 70-71).  This argument is, in my view, a disingenuous one.  While Cross arguably raised in his Amended Petition an Eighth Amendment claim that the jury instructions did not specify that the jury did not have to unanimously agree upon any specific mitigating factor, he did not cite to Mills in support.  (Doc. 37 ¶ 45).  In any event, he abandoned that claim because he never briefed it.  (See Doc. 60; see also Doc. 68 at 21 n.6; Doc. 70). The specific Mills claim came before this Court for the first time following the Court of Appeals' remand.  At the first opportunity, the Commonwealth raised the Teague defense.  (Doc. 96 at 8-10).

[14]   The Pennsylvania Supreme Court denied this claim on the merits.  Cross, 634 A.2d at 177-78.  Because this case is governed by the pre-AEDPA version of the federal habeas corpus statute, I must conduct a de novo review of the state court's application of both prongs of the Strickland

new Eighth Amendment and Fourteenth Amendment claims, as any relief he could obtain on those claims would be cumulative.

## A.

Almost thirteen months after the remand (and while these proceedings were stayed pending the Supreme Court's decision on Banks v. Horn, *supra* note 11), the Court of Appeals issued its decision in Carpenter v. Vaughn, 296 F.3d 138 (3d Cir. 2002).  In that case, the petitioner, James Carpenter, was convicted of first-degree murder in Pennsylvania state court and was sentenced to death. Carpenter, 296 F.3d at 141.  At the penalty hearing, the prosecution sought to establish one aggravating circumstance–that Carpenter had "a significant history of felony convictions involving the use or threat of violence to the person."  Id. at 142 (quoting 42 Pa.Cons.Stat. § 9711(d)(9)).  To establish this aggravating circumstance, the prosecution proved that Carpenter had previous convictions for third-degree murder and assault by a prisoner.  Id. at 156.  The jury also learned that Carpenter had been released on parole after serving time for the prior murder.  Id.

After a period of deliberation, the jury asked the following question: "Can we recommend life imprisonment with a guarantee of no parole[?]" Id. at 156.  The judge stated to them:

> The answer is that *simply, no absolutely not*.  Moreover, ladies and gentlemen, you talk about recommendation. I don't know exactly what you mean, but I assume you remember what I told you before, that you as a jury at this point are not making a recommendation of death or

standard.  Carpenter, 296 F.3d at 158.

> life imprisonment.  I hope you understand that.
> You folks are actually fixing the sentence, and not the
> Court.  It is not the recommendation.  Whether you mark
> on there death, that's the sentence and there is nothing
> this Court can do about it.  The Court has nothing to do on
> it.  If you mark life imprisonment, there is nothing this
> Court can do about it or wants to do about it, because
> that decision is entirely up to you as members of the jury.
> So, I hope you understand that it is not a
> recommendation, it is a sentence that will bind all of us
> here to whatever you fix and it's going to have to be very
> simply death or life imprisonment.  And the question of
> parole is absolutely irrelevant.  I hope that you understand
> that.

Id. (emphasis in original).  Carpenter's trial counsel did not object to this answer or

request clarification or amplification.  Id.

Following an unsuccessful appeal in state court, Commonwealth v. Carpenter,

617 A.2d 1263 (Pa. 1992), Carpenter filed a petition for writ of habeas corpus in the

United States District Court for the Middle District of Pennsylvania.  He claimed his

trial counsel provided him with ineffective assistance of counsel for failing to object

to the judge's response, which he contended intimated to the jury that he would

be eligible for parole if sentenced to life imprisonment.  See Carpenter v. Vaughn,

888 F.Supp. 635 (M.D. Pa. 1994); Carpenter v. Vaughn, 888 F.Supp. 658 (M.D. Pa. 1995).

The district court agreed that the judge's response to the jury conveyed the

misleading impression that a sentence of life imprisonment without parole was not

available.  Carpenter , 888 F.Supp. at 650.  The court then ruled that a Simmons due

process claim "was inherent" in the Sixth Amendment claim of ineffective assistance

of counsel.  Id.  After receiving additional briefing on the issue, the district court

distinguished Carpenter's case from Simmons, noting that "the prosecutor in this

case did not make a direct argument concerning petitioner's future dangerousness."
Carpenter, 888 F.Supp. at 668.  Accordingly, it determined that due process did not
require that an instruction be given regarding Carpenter's parole ineligibility.
Because due process did not require the instruction regarding parole ineligibility,
the district court reasoned, Carpenter's counsel was not ineffective for failing to
request a curative instruction that would inform the jury of its true sentencing
options, notwithstanding that the judge's response arguably misstated those
options under Pennsylvania law.  Carpenter, 888 F.Supp. at 665-68; Carpenter, 888
F.Supp. at 650-51.

    The Court of Appeals reversed.  Carpenter, 295 F.3 at 156-60.  It stated that: "In
a case in which it had been proven that the defendant was a homicidal recidivist
who had previously been paroled and in which it was apparent that the jury was
concerned about the possibility of future parole," the judge conveyed "a potentially
devastating message" to the jury: that Carpenter could be eligible for parole if he
was not executed.  Id. at 157-58.  It held that counsel's failure to object to or correct
the judge's response to the jury was objectively unreasonable:

> This was a situation in which assistance from counsel
> might very well have corrected the problem.  The trial
> judge knew that Carpenter could not be paroled while
> serving a life sentence.  If Carpenter's attorney had told
> the judge that his answer inadvertently conveyed the
> contrary impression and thus misstated Pennsylvania law
> on a point that could play a critical role in the jury's role,
> we have little doubt that the judge would have corrected
> his answer.

Id. at 157-58.  The Court of Appeals then held that counsel's error had a "highly

prejudicial impact" on Carpenter's case.  Id. at 158.

The Court of Appeals also emphasized that the district court erred when it conflated Carpenter's Sixth Amendment ineffective assistance of counsel claim with a Simmons due process claim.  Id. at 159.  It explained that even if due process did not mandate that the jury be informed that Carpenter was not eligible for parole if sentenced to life in prison, the trial court's misstatement of the jury's true sentencing options under state law required Carpenter's counsel to request a curative instruction.  It stated:

> We thus hold that the failure of trial counsel to object based on state law[17] to the judge's answer to the jury's question violated Carpenter's constitutional right to the effective assistance of counsel.  To dispel any possible confusion, we emphasize that our holding is not based on any other federal constitutional right or on Simmons.[18]
>
> ----
>
> [18] …Our decision here is not based on due process but on the right to the effective assistance of counsel, and our decision is not based on the prosecution's raising of the issue of the defendant's future dangerousness but on defense trial counsel's failure to object when the trial judge gave a dangerously misleading response to the jury's question about the availability of a life sentence without parole.

Id. at 159 & n.18.

I agree with Cross that Carpenter dictates that he is entitled to habeas relief on Claim 1.  The material facts of this case and Carpenter are compellingly similar.  Here, as in Carpenter, the jury was misinformed that the defendant would be released on parole if it did not sentence him to death.  Here, as in Carpenter, defense counsel's error allowed the misinformation to go uncorrected.  And here,

as in <u>Carpenter</u>, the jury was aware that the defendant had committed the murders for which he was being sentenced after having been released on parole on a sentence he was serving for a violent crime (in this case, Cross' Virginia rape and sodomy conviction).  <u>Id.</u> at 156.

The Court of Appeals determined that defense counsel's deficient representation in <u>Carpenter</u>, which resulted in the "misleading impression" that his client would one day be eligible for parole if sentenced to life, had "a potentially devastating effect" on the defense case.  <u>Id.</u> at 157.  Defense counsel's failure to correct the misstatement of the capital sentencing options in <u>Carpenter</u> was deemed "highly prejudicial" by the Court of Appeals, <u>id.</u> at 158, and its decision compels us to conclude the same here.

In addition, I  also am persuaded by Cross' contention that the prejudice caused by his trial counsel's error was compounded  by the effect the defense's mental-health mitigation evidence would have had on a jury operating under the erroneous belief that Cross would be paroled if sentenced to life.  As noted above, at the penalty hearing, Cross presented expert mental-health evidence to establish that Cross had serious mental problems and that he had an uncontrollable propensity for violence.[15]  This mental-health testimony was intended by defense

---

[15]  Dr. Eberle testified that Cross has a "sociopathic/passive-aggressive personality disorder," as a result of which he either "never formed" a conscience or formed a conscience that was "lack[ing] in some serious ways."  (Trial Tr. at 736-37).  He also stated that Cross has a borderline psychotic personality disorder or borderline psychosis, as a result of which "he is going to periodically find himself in a situation where his judgment about what is going on…is going to be impaired to a serious degree."  (<u>Id.</u> at 739).  He concluded: "There are going to be times when he is going to be overwhelmed by impulses[,] and he is not going to be able to guide his behavior at certain times in manners that are consistent with what most other people would agree to."  (<u>Id.</u> at 739-40).

counsel to assist Cross in making a case for a life sentence by demonstrating statutorily-enumerated mitigating circumstances.   However, with Cross' own misstatement of state law left uncorrected, it is reasonably probable that this intended mitigation evidence worked against him because the jury was: (1) told by the defense expert that Cross was uncontrollably violent, and (2) told by Cross himself that he would one day be back out on the streets if they did not sentence him to death.   The Commonwealth does not contest that as a result, the jury was prevented from considering and giving full effect to the mitigating evidence presented.   Nor does it contest Cross' argument that counsel's error also essentially transformed the defense's mitigating evidence into powerful non-statutory aggravating circumstances that supported the imposition of capital punishment.

**B.**

The Commonwealth presents several arguments in opposition to Claim 1. (Doc. 109 at 4).   It first argues that the "law of the case" doctrine precludes the Court from reexamining the claim.   That doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997) (internal quotations and citations omitted).   "As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983) (citations omitted).

The doctrine of law of the case, however, "directs the court's discretion, it does not limit the tribunal's power." Id.; Schultz v. Onan Corp., 737 F.2d 339, 345 (3d Cir. 1984). It is a presumption that the court will not reconsider its previous ruling, but it "is no more than a presumption, one whose strength varies with the circumstances[.]" Avitia v. Metro. Club of Chicago, 49 F.3d 1219, 1227 (7th Cir. 1995). The doctrine "is not a straightjacket[,]" id., nor is it a "barrier to the correction of judicial error." Schultz, 737 F.2d at 345.

Under the circumstances of this case, it is proper to reexamine Claim 1. Like the district court in Carpenter, when I first ruled on Claim 1 in 1997, I incorrectly centered my Sixth Amendment ineffective assistance analysis on whether Simmons' due process ruling required that a curative instruction be given during Cross' penalty hearing regarding the jury's true sentencing options. Because I found this case distinguishable from Simmons, I determined relief in this case was not warranted. The Court of Appeals' decision in Carpenter has disabused me of my reliance upon Simmons, and has made clear to me that Cross' trial counsel's failure to request an instruction to cure the misstatement of state law violated Cross' constitutional right to the effective assistance of counsel. I have the opportunity to correct my error and it is incumbent upon me to do so in light of the new authority. See Schultz, 737 F.2d at 345-46 (reconsideration of previously decided claim within the court's discretion when, inter alia, there is an announcement of supervening new law, or the earlier decision was clearly erroneous and would create manifest injustice.); Avitia, 49 F.3d at 1227 ("A judge may reexamine his earlier

ruling...if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm[16] to the party that had benefitted from it.")

Next, the Commonwealth attempts to distinguish Carpenter on the merits. It argues that the question of parole ineligibility was injected into this case by Cross himself, whereas in Carpenter it arose from the trial court's answer to a question from the jury.  This argument fails to recognize that Cross' misstatement resulted from defense counsel's predicate failure to properly prepare his client.  If trial counsel had properly prepared Cross, he could have prevented his client from making the significant misstatement of law in the first place.  Moreover, once Cross incorrectly told the jury he would be eligible for parole if sentenced to life imprisonment, his counsel could have and should have requested that the trial court correct the misstatement.  Carpenter, 296 F.3d at 158.  His failure to do so was objectively unreasonable.  Id.

Also unpersuasive is the Commonwealth's attempt to distinguish Carpenter by arguing that the jury's question in Carpenter indicated that it was considering a life sentence, but there was no such indication in this case.  As Cross points out, however, the distinction actually works to support his claim.  If there was no such

---

[16]   The Commonwealth will not incur undue harm from my reconsideration of Claim 1 because it will have the opportunity to appeal my decision to the Court of Appeals.  That court's review of both my legal and factual conclusions will be plenary.  Lambert v. Blackwell, 387 F.3d 210, 237 n.20 (3d Cir. 2004); Carpenter, 296 F.3d at 149-50.

jury question in this case,[17] it was likely because there was no jury confusion as to the length of a life sentence and the availability of parole.  The jury reasonably believed what it had been told by Cross–uncorrected by counsel or the trial court–that he would be eligible for parole from a life sentence after twenty years, and that because of back-time owed to Virginia, he would be eligible for release after thirty-five years.  Because the jury in Cross' case was expressly informed that Cross would be released on parole, there was no need for the jury to ask for clarification of its sentencing options.

Finally, the Commonwealth argues that in light of the "overwhelming evidence," the outcome of the penalty proceeding would have been the same notwithstanding counsel's error.  Although I do not dispute that the aggravating circumstances offered by the prosecution in this case were compelling, I cannot have confidence in the jury's sentences of death for all of the aforementioned reasons.  Defense counsel's error resulted in the interjection of a profound, lasting, and wholly incorrect consideration into the jury deliberations.  It vitiated the defense's mitigating evidence and skewed the weighing of the aggravating and mitigating evidence.

Because a death sentence is qualitatively different from other forms of punishment, there is a greater need for reliability in determining whether it is appropriate in a particular case.  See e.g., Woodson v. North Carolina, 428 U.S. 280,

---

[17]   The state court record reflects that the jury did submit a question during its deliberation, but the transcript of the sentencing hearing does not record what the jury asked. (Trial Tr. at 831-32).  In response to the question, the trial court reinstructed the jury on the circumstances in which it could impose life and those in which it could impose death.  (Id. at 832).

305 (1976).  Here, defense counsel's error was too egregious, the stakes were too high, and the likelihood of prejudice too great to deny habeas corpus relief. Although a curative instruction may not have assured Cross the avoidance of the death penalty, he has met his burden of establishing that that outcome is within the realm of reasonable probability as defined in <u>Strickland</u>, 466 U.S. at 694. Accordingly, Cross is entitled to a new sentencing hearing.

An appropriate order follows.

* * * * * * * * * * * * * * * * * * * * * * * * * *

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHARLES EUGENE CROSS,   )
          )
    Petitioner,   )
          )
          )  Civil Action No. 95-614
          )
   v.      )
          )
JAMES S. PRICE,    )
          )
    Respondent.   )
          )
AMBROSE , Chief District Judge )

## ORDER OF COURT

 AND NOW this  **30ᵗʰ**  day of August 2005, after careful consideration and for

the reasons set forth in the accompanying Opinion, it is  ORDERED that:

   1.  To the extent that Petitioner seeks relief from his
sentences of death under Claim 1, his request for habeas
corpus relief and Amended Petition (Docket No. 37) is
GRANTED;

   2.  The execution of the writ of habeas corpus is STAYED
for 120 days from the date of this Order, during which
time the Commonwealth of Pennsylvania may conduct a
new sentencing hearing;

   3.  After one hundred twenty  (120)  days, should the
Commonwealth of Pennsylvania not conduct a new
sentencing hearing, the writ shall issue and the
Commonwealth shall sentence Petitioner to life
imprisonment;

   4.   In accordance with 28 U.S.C. § 2253 (1994) (superseded by
AEDPA), a certificate of probable cause is issued;

5.  If either party files an appeal to the United States Court of Appeals for the Third Circuit, this Order will be stayed pursuant to W.D. Pa. Local R. 9.4(L);

6.  In accordance with the above, this case is marked CLOSED.


BY THE COURT:




/S/  Donetta W. Ambrose

Donetta W. Ambrose,
Chief U.S. District Judge